**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0432-18T1

PAUL RYAN,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

TOWNSHIP OF BOONTON
and BOONTON TOWNSHIP
POLICE DEPARTMENT,

       Defendants-Respondents/
       Cross-Appellants.

_____

Argued February 5, 2020 – Decided March 5, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1794-16.

Ashley Vallie Whitney argued the cause for appellant/ cross-respondent (Law Offices of Gina Mendola Longarzo, LLC, attorneys; Ashley Vallie Whitney, on the briefs).

Stephen E. Trimboli argued the cause for respondents/ cross-appellants (Trimboli & Prusinowski, attorneys;

Stephen E. Trimboli, of counsel and on the briefs; John P. Harrington, on the briefs).

PER CURIAM

Plaintiff Paul Ryan, an eighteen-year veteran of the Boonton Township Police Department (Department), appeals from an August 15, 2018 order upholding discipline for submitting a false overtime certification, but reducing the penalty to a fifteen-working-day suspension. Defendants the Department and the Township of Boonton (Township) cross-appeal, arguing the court should not have reduced the penalty from a thirty-working-day suspension. We reject all arguments and affirm.

On July 2, 2015, Detective Peter Ricciardi arrived at the Department to retrieve evidence from a rape kit plaintiff logged in the night before. Only evidence custodians are authorized to access and release evidence, but plaintiff, the primary evidence custodian, had left after his shift and the alternate evidence custodian was assigned to an "outside detail" post. Rather than call plaintiff to return to the Department to give Detective Ricciardi the evidence, Police Chief Paul Fortunato ordered the alternate evidence custodian to leave his post to do so.

Plaintiff believed that as the more senior officer, he was entitled to receive the assignment with overtime pay. He consulted the collective bargaining

agreement and his local PBA President, Officer Christopher Chicoris, about possible remedies. Plaintiff asked Chicoris to speak to the PBA attorney about whether he could file a grievance. Upon learning from Chicoris that the lawyer said plaintiff had to have his overtime request denied before grieving the issue, plaintiff submitted an overtime voucher falsely asserting he had reported to work between 10:35 a.m. and 11:18 a.m. on July 2, 2015. Plaintiff wrote in his email to the Chief forwarding the voucher, "Attached is my overtime sheet for the call[-]out that I was never called for . . . ." His signed voucher included the certification:

> I do [s]olemnly declare and certify under the penalties of law that the above is a true and correct statement of the hours worked, or services rendered by me for the time specified, and the payment due to same, as stated, is justly due and owing.

Chief Fortunato reported plaintiff's false certification to the Morris County Prosecutor's Office (MCPO).[1] The Chief also sent internal affairs officer Lieutenant Michael Danyo a letter reporting plaintiff's inaccurate voucher. Lieutenant Danyo opened an investigation.

---

[1] See fourth-degree false swearing, N.J.S.A. 2C:28-2, and second-degree official misconduct, N.J.S.A. 2C:30-2.

The next day, July 16, 2015, Chief Fortunato and Lieutenant Danyo briefly met with plaintiff to discuss his overtime voucher. After they told him "there was not a call[-]out on this day," plaintiff asked whether his voucher was denied. Chief Fortunato repeated no call-out had occurred on July 2, 2015, and plaintiff ended the meeting.

A few days later, the MCPO informed Chief Fortunato that it found "insufficient evidence to warrant a criminal prosecution for official misconduct" and referred the matter "for the commencement of an administrative investigation." Plaintiff was notified by Lieutenant Danyo that he was the subject of an internal investigation. The same day, Danyo formally interviewed defendant in the presence of defendant's counsel, who signed a "Weingarten Representative Acknowledgement" form. Within two weeks, plaintiff was served with a notice of disciplinary action recommending a ninety-working-day suspension for three violations of the Department's Rules and Regulations: neglect of duty, general responsibilities, and misconduct and incapacity.

A four-day testimonial hearing was conducted before the Township Hearing Officer (THO), who found plaintiff guilty of the misconduct violation only and recommended a thirty-working-day suspension, which the Township Committee approved on August 3, 2016.

4

A trial de novo before the court was held on June 28, 2018, pursuant to N.J.S.A. 40A:14-150, which is applicable to non-civil service municipal employees. Assignment Judge Stuart A. Minkowitz again found defendant guilty but reduced the penalty to fifteen working-days. The judge detailed his reasons in a thoughtful, comprehensive twenty-five-page written opinion.

## I. Our Standard of Review.

We play "a limited role in reviewing . . . de novo proceeding[s]." In re Disciplinary Procedures of Phillips, 117 N.J. 567, 579 (1990). "[T]he court's 'function on appeal is not to make new factual findings but simply to decide whether there was adequate evidence before the [trial court] to justify its finding of guilt.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The trial court conducting a de novo proceeding "makes its own findings of fact." Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 357 (2013) (quoting In re Phillips, 117 N.J. at 578).

We should not disturb the de novo findings of the trial court unless "the decision below was 'arbitrary, capricious or unreasonable' or '[un]supported by substantial credible evidence in the record as a whole.'" In re Phillips, 117 N.J. at 579 (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)).

A-0432-18T1

## II. Evidentiary Rulings.

When a disciplinary matter is reviewed de novo by a court, "[e]ither party may supplement the record with additional testimony subject to the rules of evidence." N.J.S.A. 40A:14-150. Plaintiff argues the trial court erred by denying his pre-trial motion and renewed argument at trial to compel discovery and expand the record to include evidence of inaccurate certifications submitted by other officers as well as the PBA attorney's advice. Plaintiff never alleged that the PBA attorney advised signing a false certification, merely that an overtime request must be denied before it can be grieved.

Plaintiff argues the trial judge abused his discretion in finding plaintiff's request to supplement the record with testimony and documents related to other officers' overtime requests was irrelevant. Plaintiff claims "the Department had an accepted, routine practice whereby officers regularly submitted overtime vouchers and payment requests containing untrue and inaccurate information, without consequence." For example, plaintiff notes that Lieutenant Danyo and Chief Fortunato testified at deposition that officers whose outside detail assignments are cancelled without proper notice, are allowed to submit overtime vouchers certifying that they completed the work when in fact they did not.

A-0432-18T1

We review a trial court's evidentiary rulings under a deferential standard and will "uphold [the trial court's] determinations 'absent a showing of an abuse of discretion.'" State v. Scott, 229 N.J. 469, 479 (2017) (quoting State v. Perry, 225 N.J. 222, 233 (2016)). Under this standard, "[a] reviewing court must not 'substitute its own judgment for that of the trial court' unless there was a 'clear error in judgment'—a ruling 'so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Perry, 225 N.J. at 233).

"Evidence must be relevant for it to be admissible" and, unless excluded by the Rules of Evidence, "all relevant evidence is admissible." State v. Schraf, 225 N.J. 547, 568-69 (2016); N.J.R.E. 401-402. "Relevancy consists of probative value and materiality." State v. Buckley, 216 N.J. 249, 261 (2013). When determining whether evidence is relevant, "[t]he inquiry is 'whether the thing sought to be established is more logical with the evidence than without it.'" Ibid. (quoting State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983)); N.J.R.E. 401.

When denying the admission of deposition transcripts, Judge Minkowitz stated:

> Plaintiff seeks to establish a practice by the Department of paying other officers for outside details when they are cancelled by a vendor; however this is not the set of circumstances under which [p]laintiff was denied overtime. Plaintiff was not requesting overtime pay due to an outside detail, but rather based on his

7

> understanding that he was not called in for overtime when he alleges he was required to be called in. Therefore, the payment of overtime vouchers in other specific circumstances is not relevant.

The trial judge did not abuse his discretion in denying both of plaintiff's requests to expand the record.

### III. Protected Union Activity.

Plaintiff argues that in submitting his overtime voucher, he was exercising his First Amendment right to redress grievances and participate in protected union activity. As he explained during his interview with Lieutenant Danyo, plaintiff reiterates in his brief that "he submitted the overtime voucher for the sole purpose of initiating the grievance process." By informing Chief Fortunato via email that his "overtime sheet [was] for the call[-]out that [he] was never called for," he claims he made his intention clear that he was initiating a grievance. Plaintiff argues that the trial judge's refusal to dismiss the discipline charges against him violates his First Amendment rights.

The collective bargaining agreement provides a three-step procedure for filing a grievance. A grievant must first inform the Chief of Police, either orally or in writing, of his or her issue within ten days of the event and the Chief must respond within three days. The grievant need not inform the Chief in any particular manner. If unsatisfied with the outcome, the grievant may then make a written request to meet

with the Township Committee or its designee to discuss the issue, requiring a response within twenty days. The last step allows the grievant to request binding arbitration.

"The New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -21, makes unlawful a discharge or otherwise adverse public employer action against a worker because of his or her union activity." In re Bridgewater Twp., 95 N.J. 235, 237 (1984). Union activity may include the "fil[ing] [of] an affidavit, petition, or complaint." N.J.S.A. 34:13A-5.4(a)(4). Plaintiff asserts that because he acted pursuant to what Officer Chicoris advised was a grievable action, he was engaged in union activity. The judge correctly determined: "[Plaintiff] was not disciplined for filing a grievance. Instead, [p]laintiff's disciplinary action arose from the circumstances surrounding his filing of a false certification . . . ."

Plaintiff submitted a false certification as part of an overtime voucher and was disciplined for doing so.

## IV. Unfair Labor Practice.

Plaintiff alleges his Weingarten[2] rights were violated because he did not have a representative at his July 16, 2015 meeting with Chief Fortunato and Lieutenant

---

[2] N.L.R.B. v. J. Weingarten, Inc., 420 U.S. 251, 260 (1975).

A-0432-18T1

Danyo. He argues that pursuant to the Attorney General's guidelines governing internal affairs investigations, he should have been told about the context of the meeting, so he could have exercised his right to representation. New Jersey Attorney General, Internal Affairs Policy & Procedures 49-50, (Dec. 2019), https://nj.gov/oag/dcj/agguide/directives/2019- Internal_Affairs_Policy_and_P rocedures.pdf [hereinafter AG Guidelines].

In Weingarten, the Supreme Court of the United States held that a union member is entitled to representation at an interview by management, where the employee reasonably believes that it will lead to disciplinary action. 420 U.S. at 256-57. N.J.S.A. 34:13A-5.4(a)(1) has been interpreted to provide public employees the same right, which if violated will constitute an unfair labor practice. Hernandez v. Overlook Hosp., 149 N.J. 68, 75 (1997). An officer must be advised prior to the start of questioning when he is the subject of a civil investigation. The right to representation attaches when he "requests representation and reasonably believes the interview may result in disciplinary action." AG Guidelines at 50-51; Weingarten, 420 U.S. at 257; In re Univ. of Med. & Dentistry, 144 N.J. 511, 530 (1996).

When scheduling the July 16, 2015 meeting, Chief Fortunato emailed plaintiff, "[S]ee me regarding this overtime sheet." Chief Fortunato had already reported plaintiff's false certification to the MCPO and the department's internal

10

affairs unit. During the meeting, however, plaintiff was not asked any questions, but was informed that the Chief knew that no call-out was made that day.

Plaintiff was disciplined after his attendance with counsel at the August 14, 2015 interview with Lieutenant Danyo. Plaintiff had been informed about the nature of the August 14 meeting and his attorney signed the "Weingarten Representative Acknowledgement." Even if the first brief July 16 meeting amounted to a Weingarten violation, the Public Employment Relations Commission has the "exclusive power" to resolve an unfair labor practice. N.J.S.A. 34:13A-5.4(c).

## V. Failure of Proof.

Because this case arises from a departmental disciplinary hearing, guilt must be assessed by a preponderance of the evidence based on Department policy. Pursuant to the Department's Internal Affairs Policy: "Administrative [m]isconduct is defined as a reportable incident where there is a serious violation of department rules and regulations, policy, procedure, written directive; or, conduct which adversely reflects upon the employee or the department." Pursuant to its Rules and Regulations, even in the "absence of a specific rule addressing the act or omission," the Department may find misconduct and incapacity.

A-0432-18T1

Our Supreme Court recognizes "honesty, integrity, and truthfulness [as] essential traits for a law enforcement officer." Ruroede, 214 N.J. at 362. The AG Guidelines also note:

> Honesty is an essential job function for every New Jersey law enforcement officer. Officers who are not committed to the truth, who cannot convey facts and observations in an accurate and impartial manner and whose credibility can be impeached in court cannot advance the State's interests . . . .
>
> [AG Guidelines at 62.]

An officer's dishonest behavior, "even if motivated by good intentions," is improper, and dishonest officers are disciplined accordingly. See Henry, 81 N.J. at 580 (holding that because the officer's false report, even if well-intentioned, could have "disrupt[ed] and destroy[ed] order and discipline in a prison," a ninety-day suspension was unreasonably lenient and removal was required).

Plaintiff argues that the judge erred in finding that defendants proved by a preponderance of the evidence that he was guilty of misconduct and incapacity because he lacked any wrongful intent and was forthright in his email that he did not work the hours in his overtime request. He argues that the judge's findings that he "knowingly filed a false certification," "lack[ed] candor during the administrative hearing," and "undermine[d] the public's respect for, and trust and confidence in, the Department" lacked support. Plaintiff's sworn submission of an overtime voucher

12

for hours he did not work is undisputed. The Department's definition of misconduct does not include the requirement of malicious intent.

Regarding plaintiff's argument that the judge should not have relied on the THO's findings, a trial court "must give due deference to the conclusions drawn by the original tribunal regarding credibility." Ruroede, 214 N.J. at 357 (quoting In re Phillips, 117 N.J. at 579). Judge Minkowitz recognized that these credibility determinations were not controlling. He considered the materials reviewed at the disciplinary hearing anew and agreed with the THO's findings.

## VI. Penalty.

Plaintiff argues that the fifteen-working-day suspension ordered by the trial court "should be vacated as arbitrary, capricious and unreasonable." Citing to agency decisions where officers were found guilty of intentionally making false statements, plaintiff asserts he should have received a lesser penalty, especially since he does not have a history of discipline.

Defendants argue that the original thirty-working-day suspension should be reinstated because a fifteen-working-day suspension is disproportionate to the severity of the disciplinary charge. They note that because plaintiff "submitted his statement under oath, which constitutes false swearing" and was found not entirely candid at the hearing, a more severe penalty is appropriate.

13

Judge Minkowitz found "[p]laintiff's misconduct in this matter undoubtedly qualifies as 'serious' . . . as [it] arguably could have constituted a crime." Recognizing that the THO appeared to have "simply divided the proposed suspension [of ninety-working-days] by three and imposed the [thirty] working-day penalty as a result," the judge considered the following before imposing a fifteen-working-day suspension: (1) plaintiff's lack of any disciplinary record; (2) his admission from the beginning that he did not work the hours; (3) his lack of candor "as to the motives of employees of the Department"; and (4) that a ninety-working-day suspension would reduce his salary by roughly one-third. The modified sanction was not an abuse of discretion.

Judge Minkowitz's well-reasoned findings were based on substantial, credible evidence in the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0432-18T1